IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BEARINGPOINT, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 06-675C<br>(Judge Wheeler) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

## PLAINTIFF'S NOTICE OF IDENTIFICATION OF POTENTIAL JURISDICTIONAL ISSUE PURSUANT TO RULE 12

On September 29, 2005, the Department of Interior ("DOI" or "the Department"), through a warranted contracting officer ("CO"), issued a decision purporting to "terminate for cause" GSA Schedule Task Order 37408, issued by the Department to BearingPoint on September 20, 2004. Subsequently, the Department issued a second decision purporting to terminate for cause the Blanket Purchase Agreement ("BPA") under which that Task Order had been issued. After a number of meetings between BearingPoint and DOI aimed at resolving the parties' dispute, BearingPoint filed a claim with the CO on July 28, 2006, challenging both terminations, demanding a conversion of the terminations for cause into terminations for convenience, asserting added and changed work, and requesting $19,842,777 in damages. BearingPoint also appealed the terminations (but not the claim for monetary damages) to this Court on September 26, 2006 (the "Complaint") in order to protect its rights in light of the impending running of the one-year statute of limitations. Following a series of extensions of time beyond the initial due-date, the DOI Contracting Officer's final decision on BearingPoint's claim is now not expected until January 15, 2007.

Putting aside momentarily the procedural posture of the case, BearingPoint wishes to bring to this Court's attention in accordance with Rule 12(b) and (h)(3) a potential jurisdictional issue caused by DOI's lack of authority to issue its purported terminations for cause. Pursuant to the terms and conditions of BearingPoint's GSA Schedule Contract, the DOI contracting officer lacked the authority to terminate the Task Order and the BPA. Her final decision, thus, is a legal nullity. Accordingly, this Court lacks subject matter jurisdiction to hear this appeal.

## I. JURISDICTIONAL BACKGROUND

### A. The Facts

The background facts pertinent to this issue are straightforward. On January 29, 2003, BearingPoint entered into a General Services Administration ("GSA") Multiple Award Schedule ("MAS") Contract No. GS-35F-4338D ("BearingPoint's GSA Schedule Contract"). The contract encompassed various Information Technology services. On January 5, 2004, DOI issued a BPA to BearingPoint under that Schedule Contract. The BPA was issued under the BearingPoint GSA Schedule in accordance with all terms and conditions incorporated therein through Contract Modification No. 6 dated January 29, 2003. BPA at 2.

On September 20, 2004, DOI awarded BearingPoint Task Order 37408 in accordance with the terms and conditions of the BPA and the controlling GSA Schedule Contract. Task Order 37408, Block 17 at 3.

For reasons not relevant here, a dispute ultimately developed between the parties regarding performance and the responsibility for performance delays. Consequently, the Department threatened to terminate the Task Order and the BPA for cause. BearingPoint responded that, among other things, the alleged delays were excusable because they were caused by DOI. As such, BearingPoint notified the Department that the matter had to be referred to and

resolved by the cognizant GSA Schedule contracting officer since the DOI contracting officer lacked the authority to issue a termination in the face of an allegation of excusable delay.

The DOI CO ignored BearingPoint's position regarding her lack of authority and, on September 29, 2005, purported to terminate Task Order 37408 for cause. Task Order 37408 Termination Notice at 1. Subsequently, on October 26, 2005, the CO purported to terminate the underlying BPA for cause as well. BPA Termination Notice at 1.

**B. The Applicable Regulations**

As this Court has noted previously, the rules governing a contracting officer's authority to terminate an order under a GSA Schedule Contract are set forth in a multitude of different contract terms and regulatory provisions. The terms and regulations applicable here are as follows.

**1. FAR Part 8**

As of January 29, 2003, the date of the particular iteration of BearingPoint's GSA Schedule Contract explicitly incorporated into DOI's BPA and Task Order, BPA at 2, Task Order 37408, Block 17 at 3, FAR Part 8 provided the following regarding terminations for cause:

> (a) (1) An ordering office may terminate any one or more orders for default in accordance with Part 29, Termination of Contracts. The schedule contracting office shall be notified of all cases where an ordering office has declared a Federal Supply Schedule contractor in default or fraud is suspected.
>
> (2) **Should the contractor claim that the failure was excusable, the ordering office shall promptly refer the matter to the schedule contracting office**. In the absence of a decision by the schedule contracting office (or by the head of the schedule contracting agency, on appeal) excusing the failure, the ordering office may charge the contractor with excess costs resulting from repurchase.

FAR 8.405-5 (emphasis added). This provision requires that the ordering agency CO – here, DOI – refer maters involving an excusable delay allegation to the GSA Schedule CO. It vests the Schedule CO with exclusive authority to rule on such allegations.

On July 19, 2004, subsequent to the issuance of the BPA but just prior to the issuance of Task Order 3, the FAR Council modified FAR Part 8 to provide that, in appropriate circumstances, an agency may terminate an order for cause:

> 8.406-4 (a) (1) An ordering activity contracting officer may terminate individual orders for cause. Termination for cause shall comply with FAR 12.403, and may include charging the contractor with excess costs resulting from repurchase.
>
> (2) The schedule contracting officer shall be notified of all instances where an ordering activity contracting officer has terminated for cause an individual order to a Federal Supply Schedule contractor, or if fraud is suspected.
>
> (b) **If the contractor asserts that the failure was excusable, the ordering activity contracting officer shall follow the procedures at 8.406-6, as appropriate.**
>
> 8.406-6 (a) Disputes pertaining to the performance of orders under a schedule contract. (1) Under the Disputes clause of the schedule contract, the **ordering activity contracting officer may** (i) issue final decisions on disputes arising from performance of the order . . . **or** (ii) refer the dispute to the schedule contracting officer.

FAR 8.406-4 and -6 (emphasis added). Under the new rule, to determine the "appropriate" procedure in a given situation – *i.e.*, to determine whether an allegation of excusable delay should be handled by the ordering agency or referred to the Schedule contracting officer – one must look to the specific terms of the particular Schedule contract in question. Some contracts direct that all such matters be referred to the Schedule CO, while other contracts vest concurrent authority in the ordering activity CO. *See* discussion *supra*.

**2. FAR 52.212-4**

Every Schedule contract, including the BearingPoint Schedule Contract under which the DOI issued the subject BPA and Task Order, includes the commercial items terms and conditions set forth at FAR 52.212-4. Section m of this clause, regarding terminations for cause, states as follows:

> (m) *Termination for cause*. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

FAR 52.212-4(m). This clause was in effect on the date of the award of the BPA and the Task Order to BearingPoint, and remains in effect today. Pursuant to section s of FAR 52.212-4 (order of precedence), however, this clause is subordinated to any other inconsistent solicitation or contract clause, for example, I-FSS-249-B, discussed below.

**3. Federal Supply Schedule Clause I-FSS-249-B (Default)**

BearingPoint's GSA Schedule incorporates GSA's standard Schedule Default Clause, which implements FAR 8.406. *See Spectrum Healthcare Resources*, ASBCA No. 55120, July 31, 2006, 06-2 BCA ¶ 22,277 (describing FSS-249-B as the "implementing clause" for FAR 8.406). This clause, which has been a part of GSA's standard Schedule Solicitation in one form or another since December 1997, provides as follows:

> In addition to any other clause contained herein related to termination, the following is applicable to orders placed under Federal Supply Schedule contracts.

> Any ordering office may, with respect to any one or more orders placed by it under the contract, exercise the same right of termination, acceptance of inferior articles or services, and assessment of excess costs as might the Contracting Officer, **except that when failure to deliver articles or services is alleged by the Contractor to be excusable, the determination of whether the failure is excusable shall be made only by the Contracting Officer of the General Services Administration, to whom such allegation shall be referred by the ordering office and from whose determination appeal may be taken as provided in the clause of this contract entitled "Disputes."**

GSA IT Schedule Contract at C.34 (I-FSS-249-B (May 2000)).[1] Notably, this clause vests the GSA Schedule contracting officer with exclusive authority to find a Schedule contractor in default (*i.e.*, terminate a Schedule contractor for cause) in the face of an allegation of excusable delay.

## II. DISCUSSION

Pursuant to the explicit terms of BearingPoint's GSA Schedule Contract, as incorporated into DOI's BPA and Task Order, only the GSA Schedule Contracting Officer possessed the authority to terminate BearingPoint for cause in the face of an allegation of excusable delay. *See* I-FSS-249-B. By failing to refer BearingPoint's excusable delay allegation to GSA and instead purporting to determine the validity of that allegation itself, the Department violated the express terms of the applicable Schedule contract. Consequently, its purported termination final decisions are nullities.

Over the past 10 years, this issue has been addressed numerous times by the Courts and Boards, and all have been consistent in finding an ordering agency's refusal to refer such a matter to the GSA to be an illegal abrogation of authority, and consequently a nullity.

---

[1] From December 1997 through May 2000, GSA Schedule contracts incorporated a substantively identical clause designated I-FCI-249-B.

In *United Partition Systems, Inc. v. United States*, 59 Fed. Cl. 627 (January 28, 2004), for example, this Court was called upon to determine whether it had jurisdiction over an appeal by a Schedule contractor (United Partition Systems) in circumstances similar to those here. In that case, the Government moved to dismiss United Partition's appeal for lack of jurisdiction, arguing that the Air Force's purported termination was a nullity because only the GSA Schedule contracting officer had authority to terminate the contractor for cause in light of the contractor's allegation of excusable delay. *Id.* at 631.[2]

After recognizing the number of different default and termination clauses that apply to GSA Schedule orders, this Court looked to I-FSS-249-B, and concluded that only the GSA Schedule contracting officer had the authority to issue a termination notice in the face of a contractor's allegation of excusable delay.[3] *Id.* at 641. Because the Air Force contracting officer went beyond the scope of his authority, this Court concluded that the termination decision was a legal nullity. *Id.*

In the three years since *United Partitions*, this basic rule has not changed. In *Monster Government Solutions, Inc. v. United States Department of Homeland Security*, DOTBCA Nos. 4532, 4552, March 8, 2006, 03-2 BCA ¶ 33,312, *recon. denied* 06-2 BCA ¶ 33312, June 7, 2006, for example, a Schedule contractor appealed a termination by a U.S. Customs and Border

---

2 The procedural history in *United Partitions* is complex, involving an earlier Board appeal and dismissal on jurisdictional grounds. *See United Partition Systems, Inc.*, ASBCA Nos. 53915, 53916, May 2, 2003, 03-2 BCA ¶ 32,264 (dismissing appeal for lack of jurisdiction). The details of the procedural history, which are not material here, are set forth in this Court's decision.

3 Like the FSS Default clause, the FAR termination clause applicable in *United Partition* also required the referral of such matters to the Schedule contracting officer. In contrast, the current FAR clause recognizes that, in "appropriate" circumstances, such a referral may not be mandatory. Because BearingPoint's Schedule contract incorporates the FSS Default clause that mandates such referral, however, DOI was required to refer the BearingPoint matter to GSA. *See* FSS-249-B.

Protection (CBP) contracting officer, contending that the CO lacked the authority to issue a termination because it (Monster) had asserted that its performance delays were excusable. *Id.* at 164,699. Monster then moved the Board to dismiss its appeal since, in the absence of a valid termination decision, the Board lacked jurisdiction to hear the appeal. *Id.* The Board agreed.

Finding that I-FSS-249-B "required the CBP contracting officer to refer Monster's assertions that its performance failures were excusable to the GSA schedule contracting officer for a decision from which Monster could appeal," the Board held that the CBP's "failure to refer the dispute to the GSA schedule contracting officer renders CBP's termination and excess reprocurement decisions nullities." *Id.* Consequently, the Board concluded that it lacked jurisdiction to hear the appeal, and dismissed the action. *Id.*

Notably, the implementing FSS default clause at issue in *Monster*, like the one at issue in *United Partitions*, is the same clause incorporated in BearingPoint's Schedule contract.[4]

The most recent addition to this line of cases is *Spectrum Healthcare Resources*, ASBCA No. 55120, July 31, 2006, 06-2 BCA ¶ 33,377. *Spectrum* is particularly notable in that it is the "exception that proves the rule." *Spectrum* involved a GSA Schedule delivery order for ambulance services, and the purported termination for cause of that order by the Navy. Following the Navy's purported termination, Spectrum Healthcare appealed to the Armed Services Board of Contract Appeals. The Navy moved for summary judgment, claiming that the Board lacked jurisdiction to hear the appeal because only GSA had the authority to issue a final decision where excusable delay is involved. *Id.* at 165,468-69.

In considering the multitude of termination provisions applicable to a GSA Schedule contract, including the various iterations of FAR 8.406 over the past 10 years, the Board noted

---

4 *See* note 3 regarding the applicable FAR commercial items termination provision.

that the standard Schedule Default clause (FSS-249-B) requires that, where an FSS contractor alleges that a delivery failure is excusable, the ordering office CO must "refer the matter to the FSS contracting officer." *Id.* at 165,468. The Board went on to note, however, that, in this particular case, the FSS clause applicable to the contract had been modified by the VA[5] through the implementation of a formal deviation. *Id.* at 165,468-69. In contrast to the clause controlling DOI's actions here, the deviation applicable to the Navy in *Spectrum Healthcare* authorized "an ordering activity CO to terminate [a delivery order] for default when an FSS contractor alleges excusable default . . . ." *Id.* at 165,469 (I-FSS-249-B, DEFAULT/CAUSE (MAY 2000) (DEVIATION DEC 2004)). Based upon this deviation, the Board concluded that it had jurisdiction over the appeal. *Id.*

GSA has not incorporated any such deviation into BearingPoint's Schedule Contract, which, to this day, includes the standard FSS-249-B Default clause.

## III. CONCLUSION

For the foregoing reasons, BearingPoint respectfully requests that this Court schedule a meeting or telephone conference among the parties to discuss the potential jurisdiction issue caused by the DOI Contracting Officer's wrongful termination for cause.

Respectfully submitted,

/s/ Jonathan S. Aronie

Jonathan S. Aronie
Attorney For BearingPoint, Inc.
1300 I Street, NW, 11th Floor East
Washington, D.C. 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Dated: December 14, 2006

Enclosures

---

5 The VA administers certain Federal Supply Schedule contracts by delegation from GSA.

Of Counsel:

Louis D. Victorino
Keith R. Szeliga
Marko W. Kipa
Sheppard Mullin Richter & Hampton LLP

Domingo Maradiegue
BearingPoint, Inc.

## CERTIFICATE OF FILING

I certify that on December 14, 2006 Plaintiff's "NOTICE OF IDENTIFICATION OF POTENTIAL JURISDICTION ISSUE PURSUANT TO RULE 12" was filed electronically. I understand that notices of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jonathan S. Aronie

JONATHAN S. ARONIE
ATTORNEY FOR BEARINGPOINT, INC.

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 06-675C

(Filed December ____, 2006)

| | |
|---|---|
| BEARINGPOINT, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**[PROPOSED] ORDER**

On December 14, 2006, Plaintiff, BearingPoint, Inc. ("BearingPoint"), filed a Notice Of Identification Of Potential Jurisdictional Issue Pursuant To Rule 12 ("Notice"). The Notice brought to the Court's attention a potential jurisdictional issue which could divest the Court of jurisdiction to entertain the appeal. *See* RCFC 12(h)(3). After careful consideration of BearingPoint's Notice, the following is hereby ordered:

1. The parties shall notify the Court by ________________, as to their availability to participate in a status conference or telephonic conference concerning the jurisdictional issue identified by Plaintiff.

**IT IS SO ORDERED.**

THOMAS C. WHEELER
Judge