No. 06-675
(Judge Wheeler)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

BEARINGPOINT, INC.,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

---

PETER D. KEISLER
Assistant Attorney General

JEANNE E. DAVIDSON
Acting Director

Of Counsel:

JAMES L. WEINER
EMILY E. PARKHURST
Department of the Interior

FRANKLIN E. WHITE, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit
8th Floor
Washington, D.C. 20530
Tele: (202) 307-6462
Fax: (202) 514-7969

February 20, 2007

Attorneys for Defendant

**TABLE OF CONTENTS**

**PAGE**

STATEMENT OF FACTS . . . . . 2

ARGUMENT . . . . . 7

I. The DOI Contracting Officer Was Authorized To Terminate For Default Task Order 3 And The BPA, Without Referral To The GSA Schedule Contracting Officer . . . . . 7

A. A Federal Official's Authority To Bind The Government Is Determined By Statute, Regulation, And Internal Agency Procedure – Not Contract Provisions . . . . . 7

B. As Of July 19, 2004, Ordering Activity Contracting Officers Are Authorized By The FAR To Issue Final Decisions Terminating For Default Orders Issued Under GSA Schedule Contracts Regardless Of Whether The Contractor Asserts That The Default Was Excusable . . . . . 9

CONCLUSION . . . . . 15

# TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

Federal Crop Ins. Corp. v. Merrill,
332 U.S. 380 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

General Engineering & Mach Works v. O'Keefe,
991 F.2d 775 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

Harbert/Lummus Agrifuels Projects v. United States,
142 F.3d 1429 (Fed. Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Johnson Management Group CFC, Inc. v. Martinez,
308 F.3d 1245 (Fed. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Lavezzo v. United States,
74 Fed. Cl. 502 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

McAfee v. United States,
46 Fed. Cl. 428 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Monster Government Solutions, Inc. v. U.S. Department of Homeland Security,
DOTCAB No. 4532, 06-1 BCA ¶ 33,236,
2006 WL 649910 (March 8, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

Renda Marine, Inc. v. United States,
71 Fed. Cl. 782 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Sharp Electronics Corp.,
ASBCA No. 54475, 04-2 BCA ¶ 32,704, 2004 WL 1747419 (August 2, 2004) . . . . . . . 13

In re Spectrum Healthcare Resources, Inc.,
ASBCA No. 55120, 06-2 BCA ¶ 33377 (July 31, 2006) . . . . . . . . . . . . . . . . . . . . . . 12, 13

United Partition Systems, Inc. v. United States,
59 Fed. Cl. 627 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Urban Data Systems, Inc. v. United States,
699 F.2d 1147 (Fed. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

## TABLE OF AUTHORITIES

**STATUTES AND REGULATIONS** **PAGE(s)**

48 C.F.R. § [FAR] 1.108(d)(1) . . . . . 14

48 C.F.R. § [FAR] 8.406-4 . . . . . passim

48 C.F.R. § [FAR] 8.406-6 . . . . . passim

28 U.S.C. § 1491 . . . . . 7

41 U.S.C. §§ 601-613 . . . . . 7

**MISCELLANEOUS**

Federal Acquisition Regulation; Federal Supply Schedule Order Disputes and Incidental Items, 67 Fed. Reg. 43514-01, 2002 WL 1377508 (June 22, 2002) . . . . . 11

Federal Acquisition Regulation; Federal Supply Services Schedule and Blanket Purchase Agreements (BPAs), 68 Fed. Reg. 19294-01, 2003 WL 1891769 (proposed April 18, 2003) . . . . . 10

Federal Acquisition Regulation; Federal Supply Services Schedule and Blanket Purchase Agreements (BPAs), 69 Fed. Reg. 34231-01, 2004 WL 1357660 (June 18, 2004) . . . . . 10

## INDEX TO APPENDIX OF EXHIBITS

Exhibit A (Excerpt of Request for Quotation No. 73873, dated Aug. 7, 2003) . . . . . 1-4

Exhibit B (BearingPoint letter dated June 20, 2005) . . . . . 5-19

Exhibit C (Excerpt from BearingPoint Business Quotation, dated Oct. 10, 2003) . . . . . 20

Exhibit D (BearingPoint letter dated July 8, 2005) . . . . . 21-22

Exhibit E (Declaration of Aprell Joyce) . . . . . 23-25

Exhibit F (E-mail from Jacquline Draughn to Aprell Joyce, dated Sep. 12, 2005) . . . . . 26-28

Exhibit G (Cure Notice regarding BPA No. 73873, dated Oct. 20, 2005) . . . . . 29-32

Exhibit H (Copy of GSA, Federal Acquisition Service, e-mail issued Feb. 16, 2007) . . . . . . . . 33

Exhibit I (BearingPoint response to cure notice, dated Sep. 2, 2005) . . . . . . . . . . . . . . . . . . . 34-53

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| BEARINGPOINT, INC., | ) | |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 06-675C |
| v. | ) | (Judge Wheeler) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S
MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Pursuant to Rule 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC"), defendant, the United States, respectfully submits this response in opposition to Plaintiff's Motion To Dismiss For Lack Of Subject Matter Jurisdiction Pursuant To RCFC 12(b)(1) And Incorporated Memorandum Of Points And Authorities, which plaintiff BearingPoint, Inc. ("BearingPoint") filed and served electronically on January 19, 2007. Pursuant to the Federal Acquisition Regulation ("FAR") revision that became effective on July 19, 2004 (i.e., FAR 8.406-4(b)), the contracting officer for the United States Department of the Interior ("DOI") possessed authority, in 2005, to terminate for default both Task Order 3 and the remainder of the Blanket Purchase Agreement ("BPA"), pursuant to which Task Order 3 had been awarded. Accordingly, as the DOI contracting officer's termination decisions were authorized agency final decisions, BearingPoint's contention that the Court lacks subject matter jurisdiction should be denied.

STATEMENT OF FACTS

BearingPoint (formerly KPMG Consulting, Inc.) provides information technology and systems integration services to Federal agencies through a GSA Schedule 70 contract (Contract No. GS-35F-4338D). On August 7, 2003, the DOI issued Request for Quotation No. 73873 ("the solicitation") to GSA Schedule 70 contractors. Def. Ex. A.[1] The solicitation sought technical proposals from GSA contractors to implement the DOI's Financial and Business Management System ("FBMS"), a multi-phased department-wide deployment to replace older, disparate software systems with an integrated platform for most DOI business functions, including travel, accounting, procurement, and personnel. Offerors were "expected to propose a total solution that addresses all objectives, considerations, and constraints on a stand-a[]lone basis." Id. The solicitation informed offerors that the DOI intended to award a single BPA to the offeror that submitted the best value proposal (technical/management solution, past performance, and price considered) that conformed to the solicitation requirements. Id.

On October 10, 2003, BearingPoint submitted its detailed proposal to the solicitation. Among other features, BearingPoint's proposal included a section that cross referenced its proposed solutions with specific objectives listed in the solicitation, and included a critical path method integrated deployment schedule. Following oral presentations, the DOI determined BearingPoint's offer to be the best value, and, on January 5, 2004, the DOI awarded BPA No. 73873 to BearingPoint. Pl. Ex. A.[2] At that time, the DOI estimated that the value of purchases

---

[1] "Def. Ex. ___" refers to an exhibit attached to this brief.

[2] "Pl. Ex. ___" refers to an exhibit attached to Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to RCFC 12(b)(1) and Incorporated Memorandum of Points and Authorities.

through the BPA would total $20 million between the date of award and September 2013. Id. The BPA stated: “All orders placed against this BPA are subject to the terms and conditions of the GSA Schedule Contract, except as noted below[.]” Id. The BPA expressly included “the original quote presented by BearingPoint dated October 10, 2003" and also stated: “The terms and conditions included in this BPA apply to all Task Orders made pursuant to it. In the event of an inconsistency between the provisions of this BPA and the Contractor’s invoice, the provisions of this BPA will take precedence.” Id.

Pursuant to the BPA, the DOI awarded several task orders to BearingPoint, however, BearingPoint’s complaint in this case primarily addresses Task Order 3, which was terminated for default. The DOI awarded Task Order 3 (i.e., Order No. 0404DO37408) to BearingPoint on September 20, 2004. Pl. Ex. C. Task Order 3 required BearingPoint to implement certain functions of the FBMS in three component offices of the DOI – the Minerals Management Service (“MMS”), the Office of Surface Mining, Reclamation, and Enforcement (“OSM”), Bureau of Land Management (“BLM”) – by the end of 2005. Id. Page three of Task Order 3 states, in part:

> The contractor shall perform this Task Order 37408 under BPA73873/GS35F4338D in accordance with the contractor’s proposal titled Task Order 03 dated September 17, 2004, and the general terms and conditions of the above referenced contract. The aforementioned proposal is hereby incorporated into this document with the same force and effect as if included in full text.

Id.

In the spring of 2005, BearingPoint began to fall behind schedule under Task Order 3. Throughout the spring and summer of 2005, DOI and BearingPoint engaged in many meetings and exchanges of correspondence regarding the schedule for Task Order 3 and BearingPoint’s

performance. Ultimately, discrete disputes were transformed into a more fundamental disagreement between the parties regarding the legal effect of the BPA. In its letter of June 20, 2005, responding to a DOI written request for adequate assurances of future performance, BearingPoint asserted that the BPA did not impose binding contractual obligations upon BearingPoint:

- "The BPA issued by DOI in this case . . . is not a contract."
- "[T]he BPA did not – and does not – obligate BearingPoint to accept all of the individual orders issued by DOI under the BPA."
- BearingPoint is not "obligated to honor any order for a combination of items in excess of the [Federal Supply Schedule contract] maximum order threshold."[3]
- "In light of the foregoing, it is clear that the DOI BPA . . . is not a contract and the quantities estimated in the BPA are not binding."

Def. Ex. B. Subsequently, BearingPoint informed the DOI that it also believed that it had no obligation to perform Task Order 3. In a letter dated July 8, 2005, BearingPoint stated:

> BearingPoint has worked at risk since April 7, 2005 because BearingPoint has yet to receive a valid contractual document extending the funding of Order # 37408 beyond April 6, 2005. In so performing, BearingPoint specifically advised DOI that BearingPoint's continued performance should not be construed by DOI as acceptance of Modification 6. Thus, since BearingPoint has no current obligation to perform under Order # 37408, there is no contractual obligation to "deploy three bureaus in October of

---

[3] This statement appears to contradict BearingPoint's originally proposed "General Volume Discount," which was based, in part, upon BearingPoint's "full recognition that individual DOI FBMS Task Orders may exceed the current Maximum Order Limitation (MOL) against [its] GSA FSS Group 70 Schedule contract . . . ." Def. Ex. C.

> 2005."

Def. Ex. D.

On August 23, 2005, after numerous attempts at resolution and unacceptable BearingPoint responses to requests for adequate assurance of future performance, DOI's contracting officer, Ms. Aprell Joyce, issued to BearingPoint a cure notice relating to Task Order 3. Ms. Joyce copied the GSA schedule contracting officer, Ms. Jacqulin Draughn, with this correspondence. Def. Ex. E (Declaration of Aprell Joyce). In its September 2, 2005 response, BearingPoint asserted, relying upon the I-FSS-249-B (Default) (May 2000) clause in its schedule contract, that the DOI could not terminate Task Order 3 in the face of BearingPoint's alleged excusable delay. Def. Ex. I.

On September 9, 2005, Ms. Joyce sent an e-mail to Ms. Draughn, in which she stated:

> I was hoping to hear from you or GSA attorney today regarding the clause in Schedule 70 contract I-FSS-249-B (Default).
>
> I understand that you are researching this and attempting to contact the attorney, but in addition to the questions that I have previously asked, I would like to add the following:
>
> Is it possible for you as the Contracting Officer or GSA to delegate the authority of making the determination on whether the failure is excusable? [Can you please get] back to me? I can submit the request via a formal letter if needed.
>
> Thank you and I look forward to talking with you soon.

Def. Ex. F. On September 12, 2005, Ms. Draughn responded by e-mail to Ms. Joyce, stating as follows:

> Generally, when a dispute arises that relates solely to the task order (i.e., does not impact the schedule contract), the contracting officer responsible for issuing a final decision is the task order CO. If,

> however, there is a dispute that goes to the terms and conditions of the schedule contract, the matter must be referred to the schedule contracting officer for resolution.
>
> Late delivery seems like a performance issue, a matter for resolution at the task order level. Also, note that FAR 8.406-4 governs terminations for cause under the schedules program. Although it requires compliance with FAR 12.403, it is important to start with and follow 8.4 procedures. Please call me with any questions on (703) 605-2715.

Id.

On September 29, 2005, following BearingPoint's written response to the cure notice for Task Order 3, Ms. Joyce issued a Termination for Cause Notice for Task Order 3 for failure to make progress on Deployments 2A and 2B, failure to give adequate assurances of future performance, and anticipatory breach. Pl. Ex. D. Ms. Joyce copied the GSA contracting officer, Ms. Draughn, with this correspondence. Def. Ex. E.

On October 20, 2005, Ms. Joyce issued to BearingPoint a cure notice relating to the remainder of the BPA 73873. Def. Ex. G. In that cure notice, the DOI noted BearingPoint's apparent disavowal of the BPA, and warned BearingPoint that it would terminate for cause the remainder of the BPA, unless BearingPoint: (1) affirmed the accuracy of the representations set forth in its original FBMS proposal; (2) detailed how it intended to fulfill its obligations under the BPA; and (3) agreed to abide by its promises. Id. Ms. Joyce copied the GSA contracting officer, Ms. Draughn, with this correspondence. Def. Ex. E. On October 27, 2005, after BearingPoint disavowed that it had made an enforceable commitment, Ms. Joyce issued a Termination for Cause Notice for BPA 73873. Pl. Ex. E. Ms. Joyce copied the GSA contracting officer, Ms. Draughn, with this correspondence. Def. Ex. E.

On September 26, 2006 – almost 12-months from the date of the DOI contracting

officer's termination notice relating to Task Order 3 – BearingPoint filed its complaint in this Court.[4] In paragraph 3 of its complaint, BearingPoint alleges that "[t]his Court has jurisdiction over the subject matter of this action pursuant to the Tucker Act, 28 U.S.C. § 1491, and the Contract Disputes Act, 41 U.S.C. §§ 601-613."

## ARGUMENT

### I. The DOI Contracting Officer Was Authorized To Terminate For Default Task Order 3 And The BPA, Without Referral To The GSA Schedule Contracting Officer

#### A. A Federal Official's Authority To Bind The Government Is Determined By Statute, Regulation, And Internal Agency Procedure – Not Contract Provisions

In its memorandum, BearingPoint contends that the termination decisions of the DOI contracting officer are "nullities" (and, thus, are not final decisions that can support this Court's exercise of subject matter jurisdiction pursuant to the Contract Disputes Act) because the "explicit terms of BearingPoint's GSA Schedule Contract," allegedly required the DOI contracting officer to refer BearingPoint's allegation of excusable delay to the GSA schedule contracting officer, whose decision would then constitute the Government's final decision for purposes of the CDA. See Pl. Mem. at 6. BearingPoint's analysis is fundamentally flawed because it is premised upon the erroneous proposition that a Federal official's authority can in some manner depend upon the language contained in a contract. Whether a Federal official possessed authority to bind the Government is always determined by reference to the law (e.g.,

---

[4] Although BearingPoint was required to institute a timely action in this Court (or in a board of contract appeals) in order to preserve its argument that the DOI contracting officer lacked authority to issue the termination notices, see Renda Marine, Inc. v. United States, 71 Fed. Cl. 782 (2006) (argument that contracting officer's final decision was "unauthorized" does not exempt plaintiff from twelve-month statutory time limit provided in the CDA), we question why BearingPoint waited so long to file a complaint that urges the Court to hold that the agency decisions at issue were not valid.

statutes, regulations, agency procedures, formal delegations) existing at the time of the act in question. E.g., Federal Crop Ins. Corp. v. Merrill, 332 U.S. 380, 384 (1947) ("The scope of . . . [a Federal agent's] . . . authority may be explicitly defined by Congress or be limited by delegated legislation, properly exercised through the rule-making power."); McAfee v. United States, 46 Fed. Cl. 428, 435 (2000) ("A government agent possesses express actual authority to bind the government in contract only when the Constitution, a statute, or a regulation grants it to that agent in unambiguous terms."). See also, Johnson Management Group CFC, Inc. v. Martinez, 308 F.3d 1245 (Fed. Cir. 2002) (contracting officer not authorized to agree to contract provision that was inconsistent with the FAR); Harbert/Lummus Agrifuels Projects v. United States, 142 F.3d 1429 (Fed. Cir. 1998) (contracting officer held not to have been authorized to enter into oral contract where inconsistent with formal delegation of authority); Urban Data Systems, Inc. v. United States, 699 F.2d 1147 (Fed. Cir. 1983) (SBA contracting officials lacked authority to agree to statutorily prohibited cost-plus-a-percentage-of-cost provision contained in 8(a) subcontract). Therefore, to determine whether it possesses jurisdiction, the Court need only consider the applicable law that existed upon the dates when the DOI contracting officer issued her termination decisions and determine whether that law prohibited an ordering activity contracting officer from terminating for default BPA's and/or delivery orders awarded against GSA schedule contracts when the contractor had asserted the default was excusable. Importantly, and contrary to BearingPoint's argument, the Court is not required to interpret the GSA schedule contract, the BPA, or Task Order 3, and need not consider whether the DOI contracting officer "violated" the terms of any of these contracts, as such merits questions are wholly irrel-

evant to the issue of whether the Court possesses subject matter jurisdiction.[5]

B. As Of July 19, 2004, Ordering Activity Contracting Officers Are Authorized By The FAR To Issue Final Decisions Terminating For Default Orders Issued Under GSA Schedule Contracts Regardless Of Whether The Contractor Asserts That The Default Was Excusable

The DOI contracting officer terminated for default Task Order 3 and the remainder of the BPA on September 29, 2005 and October 27, 2005, respectively. At the time these termination decisions were rendered, the FAR expressly authorized ordering agency contracting officers to terminate for default orders issued under GSA schedule contracts, even where the contractor had asserted that the default was excusable. It is well-settled that the FAR has the force and effect of law. E.g., General Engineering & Mach Works v. O'Keefe, 991 F.2d 775, 780 (Fed. Cir. 1993). Accordingly, the DOI contracting officer's termination decisions were authorized final agency decisions, from which BearingPoint timely filed suit in this Court.

In 2003, based upon a general recognition of the fact that the Multiple Award Schedules ("MAS") program had been undergoing a gradual transformation as Federal agencies, which had traditionally purchased products from MAS contractors, increasingly sought to purchase "managed solutions" from services contractors, the FAR council proposed regulatory revisions intended to, among other things, clarify and strengthen the procedures relating to the use by ordering activities of BPAs, and relating to terminations of orders for cause. See generally

---

[5] Of course, assuming that jurisdiction is present, the Court will ultimately be required to decide whether the termination procedure followed by the Government comported with the requirements of the contract (with consideration of whether the currently applicable FAR regulations should be read into the contract), and, if not, whether a remand may be appropriate. See Lavezzo v. United States, 74 Fed. Cl. 502 (2006) (in case involving conflicting contracting officer final decisions, court remanded matter to agency for issuance of proper final decision upon plaintiff's claims).

Federal Acquisition Regulation; Federal Supply Services Schedule and Blanket Purchase Agreements (BPAs), 68 Fed. Reg. 19294-01, 2003 WL 1891769 (proposed April 18, 2003). In a final rule that was published in the Federal Register on June 18, 2004, and which became effective on July 19, 2004, FAR 8.406-4, entitled "Termination for cause," was revised to state, in relevant part:

> (a)(1) An ordering activity contracting officer may terminate individual orders for cause. Termination for cause shall comply with FAR 12.403, and may include charging the contractor with excess costs resulting from repurchase.
> (2) The schedule contracting office shall be notified of all instances where an ordering activity contracting officer has terminated for cause an individual order to a Federal Supply Schedule contractor, or if fraud is suspected.
> (b) **If the contractor asserts that the failure was excusable, the ordering activity contracting officer shall follow the procedures at 8.406-6, as appropriate**.
>
> * * *
>
> (d) Only the schedule contracting officer may modify the contract to terminate for cause any, or all, supplies or services covered by the schedule contract. If the schedule contracting officer has terminated any supplies or services covered by the schedule contract, no further orders may be placed for those items. Orders placed prior to termination for cause shall be fulfilled by the contractor, unless terminated for the convenience of the Government by the ordering activity contracting officer.

Federal Acquisition Regulation; Federal Supply Services Schedule and Blanket Purchase Agreements (BPAs), 69 Fed. Reg. 34231-01, 34238-9, 2004 WL 1357660 (June 18, 2004) ( to be codified at 48 C.F.R. § 8.406-4) (emphasis added). At the same time, FAR 8.406-6, entitled "Disputes," was revised[6] to state, in relevant part:

---

[6] Although it was re-numbered, this provision was not changed, as FAR 8.406-6 is substantively identical to former FAR 8.405-7, which first became effective on July 29, 2002.

> (a) Disputes pertaining to the performance of orders under a schedule contract.
>
> (1) Under the Disputes clause of the schedule contract, **the ordering activity contracting officer may–**
>
> (i) **Issue final decisions on disputes arising from performance of the order** (but see paragraph (b) of this section); or
>
> (ii) Refer the dispute to the schedule contracting officer.
>
> (2) The ordering activity contracting officer shall notify the schedule contracting officer promptly of any final decision.
>
> (b) Disputes pertaining to the terms and conditions of schedule contracts. The ordering activity contracting officer shall refer all disputes that relate to the contract terms and conditions to the schedule contracting officer for resolution under the Disputes clause of the contract and notify the schedule contractor of the referral.

Id. at 34239 (emphasis added).

Pursuant to the revised language of FAR 8.406-4 that was effective in 2005, when the DOI contracting officer terminated for default BearingPoint's Task Order 3 and the BPA, it should be beyond question that the DOI contracting officer was authorized by the FAR to issue the Government's final decision in both instances.[7] Moreover, none of the cases relied upon by BearingPoint support its position that the authority committed by the FAR to the DOI's contracting officer did not become applicable to the contracts that were already in existence.

---

See Federal Acquisition Regulation; Federal Supply Schedule Order Disputes and Incidental Items, 67 Fed. Reg. 43514-01, 2002 WL 1377508 (June 22, 2002).

[7] We acknowledge that the FAR continues to require that ordering activity contracting officers refer disputes relating to the terms and conditions of the schedule contract itself to GSA. Although, in its September 2, 2005 response to the DOI's cure notice, BearingPoint raised a litany of excuses, none of BearingPoint's alleged excuses are ones that would implicate the terms and conditions of the GSA schedule contract.

Although BearingPoint states that this issue has been address by the courts and the boards numerous times "over the past 10 years," many of the prior cases are easily distinguishable for the simple reason that they were decided before the effective date of the currently applicable FAR regulations. For example, in United Partition Systems, Inc. v. United States, 59 Fed. Cl. 627 (2004), the Court specifically noted the, then, proposed FAR revisions that would expand the ordering contracting officer's authority, see 59 Fed. Cl. at 635 n.7, but concluded that the applicable FAR clause (then, FAR 8.405-5) required the ordering activity contracting officer to refer excuses to the GSA. See Id. at 636 ("the Air Force's contracting officer was obliged by FAR § 8.405-5 . . . 'promptly [to] refer the matter to the schedule contracting office,' and he manifestly failed to do so."). Unlike the situation in United Partition, this case involves termination decisions that were issued after the FAR was revised. Therefore, United Partition is inapposite. Notably, in the most recent case cited by BearingPoint, In re Spectrum Healthcare Resources, Inc., ASBCA No. 55120, 06-2 BCA ¶ 33377 (July 31, 2006), the Armed Services Board of Contract Appeals correctly concluded that it possessed jurisdiction to entertain the contractor's appeal. BearingPoint interprets the holding in Spectrum Healthcare as turning upon the fact that, following the July 2004 FAR revisions, the FSS-249-B default clause contained in the schedule contract had been modified to be consistent with the ordering contracting officer's expanded authority. That is an incorrect reading of the case. Rather, it appears the board was more focused upon the effect of the FAR revision upon the ordering contracting officer's auth-

ority, and its decision was informed by the need "to avoid nullifying or impairing the increased authority accorded to ordering activity COs by the 19 July 2004 revised FAR 8.406-4 provisions . . . ." Id.[8]

BearingPoint's best hope for support is in the Department of Transportation Board of Contract Appeals' decision in Monster Government Solutions, Inc. v. U.S. Department of Homeland Security, DOTCAB No. 4532, 06-1 BCA ¶ 33,236, 2006 WL 649910 (March 8, 2006), recon. denied, 06-2 BCA ¶ 33,312, 2006 WL 1553247 (June 7, 2006), as that case involved an ordering activity contracting officer's post-July 2004 termination for default of a task order issued against a GSA schedule contract. To the extent that Monster stands for the proposition that the ordering activity contracting officer's authority to terminate for cause was limited, because the contractor had asserted excuses, this Court should hold that it was incorrectly decided. The board's error was in assuming that the "applicable" FAR provisions were the "provisions in effect when the [ordering activity] issued the task order." Id. at 164,698. As we have established above, the authority of the contracting officer is founded upon the statutory and regulatory provisions in place at the time of the act – not from a prior date when a contract is awarded or a task order issued. In addition, the board erroneously relied upon United Partition as support for a general proposition that contractor excuses for default must be referred to a GSA

[8] Notably, in Spectrum Healthcare, the board specifically asserted that its decision was consistent with its prior decision in Sharp Electronics Corp., ASBCA No. 54475, 04-2 BCA ¶ 32,704, 2004 WL 1747419 (August 2, 2004). Although the board had held that it lacked jurisdiction in Sharp Electroncs – because the "dispute" that arose from the Government's termination for convenience concerned the terms of the schedule contract – that case, arguably, supports our position that the authority of the ordering activity contracting officer should be determined "based on the date of the issuance of the . . . [delivery order] or the date when the . . . CO would have consulted the regulation in preparation for her decision." Id. at 161,795 (emphasis added).

contracting officer. As we have established above, at best, United Partition stands for the proposition that, pursuant to a historical version of the FAR, ordering activity contracting officers were once required to refer all contractor excuses to GSA schedule contracting officers.

Even were the Court to assume that the board reached the correct result in Monster, that case is factually distinguishable from this case. In Monster, the board found to be applicable the FAR regulations in effect at the time the task order was issued, and, as the relevant task order had been issued before the effective date of the current FAR 8.406-4, those FAR regulations differed from the FAR regulations that were in effect on September 20, 2004, the date when the DOI issued Task Order 3 to BearingPoint. Thus, even accepting the board's flawed reasoning, this Court should still hold that the DOI contracting officer was authorized to terminate for default Task Order 3, pursuant to the applicable FAR regulations in effect at the time the task order was issued. This is consistent with fundamental principles of Federal procurement law. See 48 C.F.R. § 1.108(d)(1) ("FAR changes apply to solicitations issued on or after the effective date of the change").

Finally, although BearingPoint accurately notes that its GSA schedule contract "to this day" includes the FSS-249-B Default clause, see Pl. Mem. 9[9], that fact does not support its position that this Court lacks subject matter jurisdiction. In fact, given that GSA schedule contracts are generally long term (even the BPAs awarded against schedule contracts can exceed five years in duration), to hold that the DOI contracting officer lacked authority to terminate BearingPoint would be tantamount to holding that the 2004 decision of the FAR council to

[9] But see Def. Ex. H (GSA e-mail notice, dated February 16, 2007, directing deletion of I-FSS-249-B, Default, from all existing solicitations and contracts).

expand the authority of ordering activity contracting officers could be indefinitely delayed by the inaction of schedule contracting officers in modifying schedule contracts. Such a holding would conflict with Federal procurement policy (as dictated by the FAR council) and, given the guidance that GSA appears to have been providing to ordering agency contracting officers, could potentially impact a significant number of prior ordering agency actions and cause additional litigation of jurisdictional issues in this Court and in the boards. To avoid these problems, and to avoid further confusing the important distinction between jurisdictional and merits issues, this Court should hold that the DOI contracting officer was authorized, in 2005, to terminate for default the task order and the BPA, where BearingPoint's excuses to default did not implicate the terms and conditions of BearingPoint's schedule contract.

## CONCLUSION

For the foregoing reasons, defendant respectfully requests that the Court deny plaintiff's motion to dismiss for lack of subject matter jurisdiction.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

/s/ Jeanne E. Davidson
JEANNE E. DAVIDSON
Acting Director

Of Counsel:

JAMES L. WEINER
EMILY E. PARKHURST
Department of the Interior

/s/ Franklin E. White, Jr.
FRANKLIN E. WHITE, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th floor
1100 L Street, N.W.
Washington, D.C. 20530
(202) 307-6462

Attorneys for Defendant

February 20, 2007

CERTIFICATE OF FILING

I hereby certify that on February 20, 2007, a copy of "DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Franklin E. White Jr.

FRANKLIN E. WHITE, JR.