**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BEARINGPOINT, INC., | } | |
| Plaintiff, | } | |
| v. | } | No. 06-675C<br>(Judge Wheeler) |
| THE UNITED STATES, | } | |
| Defendant. | } | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RCFC 12(b)(1)**

Jonathan S. Aronie
Attorney Of Record For BearingPoint, Inc.
1300 I Street, NW, 11th Floor East
Washington, D.C. 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Dated: March 9, 2007

Of Counsel:

Louis D. Victorino
Keith R. Szeliga
Marko W. Kipa
Sheppard Mullin Richter & Hampton LLP

Domingo Maradiegue
BearingPoint, Inc.

# TABLE OF CONTENTS

I. Introduction .......... 2

II. Discussion .......... 4

A. The Regulations in Place at the Time of Termination Required the DOI Contracting Officer to Refer the Issue of Excusable Delay to BearingPoint's GSA Schedule Contracting Officer .......... 4

B. The Authority of the DOI Contracting Officer Is Governed by the Regulations in Effect on the Date of Award, Which Required Referral of Excusable Delay Allegations to BearingPoint's GSA Schedule Contracting Officer .......... 6

C. The I-FSS-249-B Default Clause Included in BearingPoint's GSA Schedule Contract and Incorporated into the BPA and Task Order 3 Also Limited the DOI Contracting Officer's Authority to Resolve the Issue of Excusable Delay .......... 8

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

## CASES

*Federal Ins. Co.*, IBCA Nos. 3237 *et seq.*, July 2, 1996, 96-2 BCA ¶ 28,415 .............................. 7
*Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999)........................................................ 4
*Havelock Progress Pub. Co., Inc.*, ASBCA No. 33975, Aug. 20, 1987, 87-3 BCA ¶ 20,124 ....... 7
*Monster Gov't Solutions, Inc.*, DOTCAB No. 4532, Mar. 8, 2006, 06-1 BCA ¶ 33,236... 6, 7, 8, 9
*Southwest Marine, Inc.* DOTCAB No. 1665, Feb. 6, 1996, 96-1 BCA ¶ 28,168.......................... 7
*Spectrum Health Care Res., Inc.*, ASBCA No. 55120, July 31, 2006, 2006 WL 2349230 ... 6, 8, 9

## OTHER AUTHORITIES

I-FSS-249-B .................................................................................................... passim

## RULES

RCFC 7.2(c) ............................................................................................................. 1

## REGULATIONS

FAR 8.405-5 ................................................................................................ 2, 6, 7, 8
FAR 8.405-5(a)(2) .......................................................................................................... 2
FAR 8.406-4(b)........................................................................................................ 2, 4, 5
FAR 8.406-6(a) ............................................................................................................ 2, 4

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

| | | |
|---|---|---|
| BEARINGPOINT, INC., | } | |
| Plaintiff, | } | |
| v. | } | No. 06-675C |
| | } | (Judge Wheeler) |
| THE UNITED STATES, | } | |
| Defendant. | } | |

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RCFC 12(b)(1)**

Pursuant to Rule 7.2(c) of the Rules of the United States Court of Federal Claims ("RCFC"), plaintiff, BearingPoint, Inc. ("BearingPoint"), respectfully submits this Reply in Support of Plaintiff's Motion to Dismiss for Lack of Subject Matter Jurisdiction Pursuant to RCFC 12(b)(1). As explained below, Defendant's Response in Opposition to the Motion to Dismiss ("Opposition"), filed and served electronically on February 20, 2007, fails to establish that the contracting officer for the United States Department of the Interior ("DOI") had authority to terminate Task Order 3 and the Blanket Purchase Agreement ("BPA") under which it was issued without referring BearingPoint's allegations of excusable delay to the GSA Schedule contracting officer, as required by the Federal Acquisition Regulation ("FAR") and the terms and conditions of BearingPoint's General Services Administration ("GSA") Information Technology Schedule 70 contract (the "GSA Schedule Contract"). As the DOI contracting officer's termination decision was issued without authority, there has been no valid contracting officer's final decision, the linchpin for jurisdiction in this Court does not exist, and BearingPoint's Motion to Dismiss should be granted.

## I. Introduction

In the wake of the Government's Opposition, the facts relevant to BearingPoint's Motion to Dismiss remain few, straight-forward, and undisputed:

1. The regulation in effect on the award dates of BearingPoint's GSA Schedule Contract and the BPA required an ordering activity contracting officer to refer allegations of excusable delay to BearingPoint's GSA Schedule contracting officer. FAR 8.405-5(a)(2).

2. The regulations in effect on the award date of Task Order 3, and the termination dates of Task Order 3 and the BPA, required an ordering activity contracting officer to address performance disputes himself or refer them to BearingPoint's GSA Schedule contracting officer "***as appropriate***." FAR 8.406-4(b) (emphasis added); *see also* FAR 8.406-6(a).

3. Federal Supply Schedule Clause I-FSS-249-B, the standard GSA Schedule default clause included in BearingPoint's GSA Schedule Contract and incorporated by reference into the BPA and Task Order 3, required the determination of whether delay is excusable to be made only by BearingPoint's GSA Schedule contracting officer. GSA Schedule Contract at C.32.

4. Prior to the termination of Task Order 3 and the BPA, BearingPoint informed the DOI contracting officer that its performance delays were excusable.

5. The DOI contracting officer terminated Task Order 3 and the BPA unilaterally, without obtaining a final decision from BearingPoint's GSA Schedule contracting officer.[1] Motion to Dismiss, Exhibits D and E at 1.

Confronted with these facts, the Government argues that the DOI contracting officer was free to ignore the terms and conditions of BearingPoint's GSA Schedule Contract and the requirements of FAR 8.405-5. Opposition at 7-8. Specifically, the Government contends that the only constraints on the DOI contracting officer's termination authority were FAR 8.406-4

---

[1] Although the DOI contracting officer apparently inquired regarding the possibility of a delegation of authority from BearingPoint's GSA Schedule contracting officer, Opposition at 5-6, there is no evidence that any such delegation was requested or provided. To the contrary, it appears that the GSA Schedule contracting officer merely suggested, albeit erroneously, that late delivery was a performance issue that could be resolved by the DOI contracting officer under FAR 8.406-4 and -6. Importantly, the DOI contracting officer's actions manifested an interpretation of the applicable regulations and clauses that is consistent with that espoused by BearingPoint and inconsistent with the Government's current litigation position.

and -6 as they existed on the dates of termination. *Id.* Those regulations, according to the Government, provided the DOI contracting officer with authority to terminate Task Order 3 and the BPA unilaterally, notwithstanding the requirements of BearingPoint's GSA Schedule Contract.

As set forth below, the position articulated in the Government's Opposition is flawed in at least three fatal respects.

First, the Government's attempt to apply the regulations in effect on the dates of termination is fundamentally misguided. In this regard, the law is clear that a contract is governed by the clauses and regulations that existed on the date of award.

Second, contrary to the Government's position, there is no legal basis for the Court to recognize a termination issued in violation of the procedural requirements of the I-FSS-249-B default clause. The cases cited in BearingPoint's Motion to Dismiss demonstrate that a termination issued in violation of that clause is a nullity. *See* Motion to Dismiss at 7-9.

Third, the Government has ignored BearingPoint's position that FAR 8.406-4 and -6, as they existed on the dates of termination, also limited the DOI contracting officer's authority to terminate Task Order 3 and the BPA. By requiring use of an "appropriate" termination procedure, those regulations prohibit an ordering activity contracting officer from issuing a unilateral termination in violation of the I-FSS-249-B default clause if that clause is included in the GSA Schedule Contract. In this case, it is undisputed that the BearingPoint GSA contract included the I-FSS-249-B default clause.

## II. Discussion

### A. The Regulations in Place at the Time of Termination Required the DOI Contracting Officer to Refer the Issue of Excusable Delay to BearingPoint's GSA Schedule Contracting Officer

The Government's Opposition is based upon the premise that FAR 8.406-4 and -6 authorized the DOI contracting officer to terminate Task Order 3 and the BPA unilaterally, without referring the issue of excusable delay to BearingPoint's GSA Schedule contracting officer. Leaving aside for a moment the inapplicability of FAR 8.406-4 and -6 – an issue addressed in Section II.B of this Reply – those regulations do not support the Government's position. To the contrary, FAR 8.406-4's requirement to use an "appropriate" termination procedure must be interpreted to withhold from ordering activity contracting officers the authority to address the issue of excusable delay unilaterally where, as here, a contractor's GSA Schedule contract includes the I-FSS-249-B default clause.

As BearingPoint noted in its Motion to Dismiss, FAR 8.406-4 requires an ordering activity contracting officer to follow the "appropriate" procedure in resolving issues of excusable delay: "If the contractor asserts that the failure was excusable, the ordering activity contracting officer shall follow the procedures at 8.406-6, ***as appropriate***." FAR 8.406-4(b) (emphasis added). FAR 8.406-6 goes on describe the procedures that are "appropriate" in a given case: "Under the Disputes clause of the schedule contract, the ordering activity contracting officer ***may*** (i) issue final decisions on disputes arising from performance of the order . . . ***or*** (ii) refer the dispute to the schedule contracting officer." FAR 8.406-6(a) (emphasis added).

It is well established that "[courts] attempt to give full effect to all words contained within [a] statute or regulation, thereby rendering superfluous as little of the statutory or regulatory language as possible." *Glover v. West*, 185 F.3d 1328, 1332 (Fed. Cir. 1999). In

accordance with this clear precedent, the existence of FAR 8.406(a), including the phrase "as appropriate," must be given meaning and effect.

It is the Government's position that allegations of excusable delay do not affect the authority of an ordering activity contracting officer to terminate a task order pursuant to FAR 8.406-6(a). If that were the case, there would have been no need for the FAR Council to have addressed the issue of excusable delay separately in FAR 8.406-4(b). Thus, the Government's interpretation renders superfluous the clear requirement that an ordering activity contracting officer "shall" follow the "appropriate" procedure in cases where the contractor has alleged that performance delays are excusable. FAR 8.406-4(b).

If FAR 8.406-4(b) and its "as appropriate" requirement are to be given meaning – which they necessarily must – that meaning must be supplied by the presence of the I-FSS-249-B default clause in, or the absence of that clause from, the contractor's GSA Schedule contract. In the present case, inclusion of that clause in BearingPoint's GSA Schedule Contract vested exclusive authority in BearingPoint's GSA Schedule contracting officer to resolve all disputes concerning excusable delay:

> [W]hen failure to deliver articles or services is alleged by the Contractor to be excusable, the determination of whether the failure is excusable shall be made only by the Contracting Officer of the General Services Administration, to whom such allegation shall be referred by the ordering office and from whose determination appeal may be taken as provided in the clause of this contract entitled "Disputes."

I-FSS-249-B. By ignoring this clause of BearingPoint's GSA Schedule Contract, the DOI contracting officer exceeded her authority under FAR 8.406-4 and -6.

This interpretation of FAR 8.406-4 and -6 comports not only with the rules of construction, but also with the dictates of common sense. Surely, the drafters of these regulations were aware that thousands of GSA Schedule contracts included the I-FSS-249-B

default clause. It strains credulity to believe they intended FAR 8.406-4 and -6 to endow ordering activity contracting officers with the authority to violate that clause, thereby exposing the Government to millions of dollars in liability for improper default terminations. To the contrary, the only reasonable interpretation of FAR 8.406-4(b) – and the only interpretation that avoids an unnecessary conflict between the FAR and the standard terms and conditions of the GSA IT Schedule 70 contract – is that the regulation was intended to avoid this result by withholding authority to violate the I-FSS-249-B default clause.

Finally, it should be noted that reading FAR 8.406-4 and -6 in light of the I-FSS-249-B default clause is consistent with the approach adopted by the Boards of Contract Appeals. Specifically, when interpreting the authority of an ordering activity contracting officer to address the issue of excusable delay, the Boards have relied upon both the applicable regulations and the I-FSS-249-B default clause in analyzing their jurisdiction. *See, e.g., Monster Gov't Solutions, Inc.*, DOTCAB No. 4532, March 8, 2006, 06-1 BCA ¶ 33,236 (examining both "the applicable contract provisions and related regulations"); *Spectrum Health Care Resources, Inc.*, ASBCA No. 55120, July 31, 2006, 2006 WL 2349230 (relying upon both FAR 8.406-4 and the I-FSS-249-B default clause in its jurisdictional analysis).

**B. The Authority of the DOI Contracting Officer Is Governed by the Regulations in Effect on the Date of Award, Which Required Referral of Excusable Delay Allegations to BearingPoint's GSA Schedule Contracting Officer**

BearingPoint's Motion to Dismiss explained that the DOI contracting officer's authority was limited by the version of FAR 8.405-5 in effect on the award dates of the GSA Schedule Contract and the BPA. Motion to Dismiss at 3. That regulation clearly prohibited the DOI contracting officer from resolving BearingPoint's allegation of excusable delay: "Should the contractor claim that the failure was excusable, the ordering office shall promptly refer the matter to the schedule contracting office." FAR 8.405-5.

In response, the Government contends that the DOI contracting officer's authority was governed by FAR 8.406-4 and -6 as they existed on the dates of termination. Opposition at 7-8. Although those regulations also required referral of the issue of excusable delay to BearingPoint's GSA Schedule contracting officer, *infra* at Section II.A, BearingPoint stands by its position that the termination of Task Order 3 and the BPA was governed by FAR 8.405-5.

First, it is well established that a contract is governed by the regulations in effect on the date of award. *See, e.g., Federal Ins. Co.*, IBCA Nos. 3237 *et seq.*, July 2, 1996, 96-2 BCA ¶ 28,415 ("We apply the law in effect at the time of contract award. . . ."); *Southwest Marine, Inc.* DOTCAB No. 1665, February 6, 1996, 96-1 BCA ¶ 28,168 (applying regulations in existence at time of award); *Havelock Progress Pub. Co., Inc.*, ASBCA No. 33975, August 20, 1987, 87-3 BCA ¶ 20,124 ("[N]ew regulations are to be applied prospectively to events and agreements which occur later, unless there is a clear mandate that the change should be retroactive. Furthermore, the burden of proving a retroactive application is on the party that seeks such an application."). In the present case, the Government has failed to produce any evidence to suggest, let alone to meet its burden to establish, that FAR 8.406-4 and -6 were intended to apply to contracts in existence before their effective date.

Second, the *Monster Government Solutions* case, *supra*, is directly on point and supports the application of FAR 8.405-5. There, the Board held that it lacked jurisdiction because the ordering activity contracting officer failed to refer the allegation of excusable delay to the contracting officer's GSA Schedule contract. In reaching this conclusion, the Board relied upon FAR 8.405-5 as it existed on the date of award, rather than the regulations in effect on the date of termination. Notwithstanding the Government's bald assertion to the contrary, the Board's decision to apply FAR 8.405-5 was correct because it comported with the rule that a contract is

governed by the clauses and regulations in effect on the date of award.[2] *See, e.g Federal Ins. Co., supra*; *Southwest Marine, supra*; *Havelock Progress Pub. Co., supra.*

Third, the Government has failed to cite any case that actually supports its argument that the DOI contracting officer's authority was expanded by the post-award enactment of FAR 8.406-4 and -6. The Government contends that an official's authority is "always determined by reference to the law . . . existing at the time of the act in question." Opposition at 7-8. The only support offered for this proposition consists of the four cases cited on page 8 of its Opposition. However, none of those cases contradicts the rule that a contract is governed by the regulations in effect on the date of award, none addresses the effect of a subsequently enacted regulation on a contracting officer's authority, and none involves contract dispute or termination procedures. Accordingly, these cases are wholly irrelevant to the Court's determination regarding which regulations govern the DOI contracting officer's termination of Task Order 3 and the BPA.

### C. The I-FSS-249-B Default Clause Included in BearingPoint's GSA Schedule Contract and Incorporated into the BPA and Task Order 3 Also Limited the DOI Contracting Officer's Authority to Resolve the Issue of Excusable Delay

In its Motion to Dismiss, BearingPoint explained that the I-FSS-249-B default clause also limited the DOI contracting officer's authority to terminate Task Order 3 and the BPA for cause without referring the issue of excusable delay to BearingPoint's GSA Schedule contracting

2 The Government makes much of the fact that the *Monster Government Solutions* opinion applied the regulation in effect when the agency issued the relevant task order. Opposition at 13. According to the Government, this means that the termination of Task Order 3 would be governed by FAR 8.406-4 and -6 because those regulations were enacted before the issuance of that Task Order. *Id.* In *Monster Government Solutions*, however, the relevant task order was issued directly against the contractor's GSA Schedule contract. Here, in contrast, Task Order 3 was issued under a BPA, which establishes the terms and conditions for all task orders. Because FAR 8.405-5 was in effect on the award date of the BPA, the BPA and all task orders issued thereunder, including Task Order 3, are governed by that regulation, rather than subsequently enacted FAR 8.406-4 and -6.

officer. In response, the Government contends that an official's authority cannot be limited by contract. That argument, however, plainly contradicts the reasoning of both *Monster Government Solutions*, *supra* and *Spectrum Healthcare*, *supra*.

In the *Monster Government Solutions* case, the Board relied upon both the FAR and the terms and conditions of the contractor's GSA Schedule contract in concluding that jurisdiction did not exist:

> Here, the ***applicable contract provisions*** and related regulations required the CBP contracting officer to refer Monsters assertions that its performance failures were excusable to the GSA schedule contracting officer for a decision from which Monster could appeal. Because Monster asserted that its performance failures were excusable, only the GSA schedule contracting officer possessed authority to issue an appealable decision on the excusability of the performance failures.

*Monster Government Solutions*, *supra* (emphasis added).

Similarly, in *Spectrum Healthcare*, the Board's analysis of its jurisdiction focused primarily upon the presence or absence of the I-FSS-249-B default clause, rather than the requirements of the FAR:

> Board precedents on DO's under FSS contracts are consistent with the foregoing interpretation. When the contractor contended that the Air Force CO's default termination of a DO under a GSA/FSS was wrongful and claimed $108,000 for a convenience termination, the CO denied that claim and claimed $10,987 in excess reprocurement costs in May 2002 (before the 29 July 2002 revision to FAR 8.405-7), ***and the GSA/FSS included the restrictive May 2000 FSS-249-B Default clause***, the Air Force CO's final decision was invalid and the ASBCA lacked jurisdiction to entertain the dispute. United Partition Systems, Inc., ASBCA Nos. 53915, 53916, 03-2 BCA ¶ 32,264 at 159,597. Likewise, when the contractor's dispute related " *solely* to the validity and/or applicability of the terms and conditions of the GSA [FSS] contract, *not* performance of the Navy DO" (emphasis added), ***and the FSS contract did not include the December 2004 FSS-249-B Default clause***, the Navy CO had no authority to issue the purported decision and the ASBCA had no jurisdiction of the appeal. *Sharp Electronics Corp.*, ASBCA No. 54475, 04-2 BCA ¶ 32,704 at 161,795-96.

*Spectrum Healthcare*, *supra* (emphasis added).

In light of the Board's reasoning in these cases, the Government's position that the I-FSS-249-B default clause does not affect the issue of jurisdiction is wholly untenable. Accordingly, the presence of that clause in BearingPoint's GSA Schedule Contract constitutes an additional, independent basis for concluding that the DOI contracting officer exceeded her authority by failing to refer the issue of excusable delay to BearingPoint's GSA Schedule contracting officer.

## III. CONCLUSION

For the reasons set forth above, as well as those previously articulated in the Motion to Dismiss, the DOI contracting officer's purported termination of Task Order 3 and the BPA was beyond the scope of her authority, and, thus, without legal effect. Accordingly, BearingPoint respectfully requests that this Court dismiss the complaint for lack of subject matter jurisdiction on the grounds that no valid contracting officer's final decision has been issued in this case.

Respectfully submitted,

/s/ Jonathan S. Aronie

Jonathan S. Aronie
Attorney Of Record For BearingPoint, Inc.
1300 I Street, NW, 11th Floor East
Washington, D.C. 20005-3314
Tel: (202) 218-0039
Fax: (202) 218-0020

Dated: March 9, 2007

Of Counsel:

Louis D. Victorino
Keith R. Szeliga
Marko W. Kipa
Sheppard Mullin Richter & Hampton LLP

Domingo Maradiegue
BearingPoint, Inc.

## CERTIFICATE OF FILING

I certify that on March 9, 2007 Plaintiff's "REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION PURSUANT TO RCFC 12(b)(1)" was filed electronically. I understand that notices of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Jonathan S. Aronie

JONATHAN S. ARONIE
ATTORNEY FOR BEARINGPOINT, INC.