# In the United States Court of Federal Claims

No. 06-675C

(Filed: April 30, 2007)

| | | |
|---|---|---|
| BEARINGPOINT, INC., Plaintiff, v. THE UNITED STATES, Defendant. | * | GSA Schedule Contract, Blanket Purchase Agreement, and Task Orders; Authority of Ordering Agency or GSA Contracting Officer to Terminate for Cause; Subject Matter Jurisdiction. |

*Jonathan S. Aronie*, BearingPoint, Inc., with whom were *Louis D. Victorino*, *Keith R. Szeliga*, and *Marko W. Kipa*, Sheppard Mullin Richter & Hampton LLP, *Domingo Maradiegue*, BearingPoint, Inc., Of Counsel, all of Washington, D.C., for Plaintiff.

*Franklin E. White, Jr.*, with whom were *Peter D. Keisler*, Assistant Attorney General, and *Jeanne E. Davidson,* Acting Director, U.S. Department of Justice, Commercial Litigation Branch, Civil Division, Washington, D.C., *James L. Weiner* and *Emily E. Parkhurst*, U.S. Department of the Interior, Of Counsel, for Defendant.

## OPINION AND ORDER ON MOTION TO DISMISS

WHEELER, Judge.

This case is before the Court on Plaintiff BearingPoint's motion to dismiss for lack of subject matter jurisdiction, pursuant to Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC"). In its September 26, 2006 Complaint, BearingPoint requested a timely review under the Contract Disputes Act, 41 U.S.C. § 601 et seq., of two default terminations issued by a Department of Interior ("DOI") Contracting Officer. BearingPoint now asserts in its motion to dismiss that the DOI lacked authority to issue such termination notices. The case involves BearingPoint's Multiple Award Schedule contract with the General Services

Administration ("GSA"), and a Blanket Purchase Agreement ("BPA") and Task Order issued by the DOI. The DOI Contracting Officer purported to terminate the Task Order and the BPA for default on September 29, 2005 and October 27, 2005 respectively. BearingPoint contends that, under the applicable contract provisions, only the GSA Contracting Officer had authority to issue default terminations where BearingPoint alleged excusable delay as a defense.

Defendant asserts that an amendment to the Federal Acquisition Regulations ("FAR"), enacted after the award of the BPA but before the award of the Task Order, authorized the DOI Contracting Officer to terminate these agreements. Defendant argues that a contracting officer's authority to bind the Government is determined by statute, regulation, and internal agency procedure, not by contract provisions.

The question presented is whether a FAR amendment effective *after* a government contract is executed should nonetheless govern the contract, and take precedence over a conflicting contract provision. The competing terms are in FAR §§ 8.406-4 and 8.406-6,[1] and in Federal Supply Schedule clause I-FSS-249-B, "Default." If the FAR amendment governs, then the DOI Contracting Officer was authorized to issue the default terminations. If the contract provision governs, only the GSA Contracting Officer could issue the default terminations.

For the reasons explained below, the Court concludes that it does not have jurisdiction over this matter. The contract language in BearingPoint's Schedule Contract granted exclusive authority to the GSA Contracting Officer to issue a default termination where the contractor alleged excusable delay as a defense. This language also governed the administration of the BPA and the Task Order. The GSA could have incorporated the FAR amendment into the Schedule Contract as a modification, but it did not. Instead, the GSA reaffirmed the application of its standard clause, I-FSS-249-B, after the FAR amendment had been issued. The Complaint therefore is dismissed without prejudice, and the DOI default terminations are to be treated as a legal nullity.

---

[1] See 69 Fed. Reg. 34,231, -38, -39 (June 18, 2004). The Civilian Agency Acquisition Council and the Defense Acquisition Regulations Council promulgated FAR §§ 8.406-4 and 8.406-6 "to incorporate policies for services and to strengthen the procedures for establishing Blanket Purchase Agreements under the Federal Supply Schedules." The amendments became effective July 19, 2004. Id.

Factual Background[2]

On January 29, 2003, Plaintiff, BearingPoint, Inc., entered into Multiple Award Schedule ("MAS" or "Schedule") Contract No. GS-35F-4338D with the GSA. Through this "Schedule 70" contract, BearingPoint provides information technology and system integration services to federal agencies. On August 7, 2003, the DOI issued Request for Quotations No. 73873 to holders of GSA Schedule 70 contracts. (Deft's Exh. A). This solicitation sought technical proposals to implement the DOI's Financial and Business Management System ("FBMS") Project. The FBMS is a multi-phased, department-wide information technology system intended to replace older, disparate software systems. The new system will provide a platform for DOI business functions such as travel, accounting, procurement, and personnel management. The solicitation informed offerors that DOI intended to award a single BPA to the offeror that submitted the best value proposal conforming to the solicitation requirements.

The DOI determined BearingPoint's proposal to be the best value, and on January 5, 2004, awarded BPA No. 73873 to BearingPoint under the MAS Contract. (Pltf's Exh. A). The DOI estimated that the value of the purchases through the BPA would total $20 million between the date of award and September 2013. Id. at 2. The BPA, and all task orders placed under it, incorporated the terms and conditions of the MAS Contract, including Modification No. 6 thereto, dated January 29, 2003. (Pltf's Exh. B, ¶¶ 4.6.1, 4.6.7).

As contemplated by the BPA, the DOI began awarding task orders to BearingPoint. On September 20, 2004, the DOI awarded Task Order 3 (Order No. 0404D037408) to BearingPoint in accordance with the terms and conditions of the BPA and the MAS Contract. (Pltf's Exh. C). Task Order 3 required BearingPoint to implement certain functions of the FBMS in three offices of the DOI – the Minerals Management Service, the Office of Surface Mining, Reclamation, and Enforcement, and the Bureau of Land Management.

In the Spring of 2005, BearingPoint began to fall behind schedule in the performance of Task Order 3. A dispute developed between the parties regarding the responsibility for the delays. On August 23, 2005, the DOI's Contracting Officer, Ms. Aprell Joyce, issued a Cure Notice to BearingPoint regarding Task Order 3. (Deft's Response at 5). Ms. Joyce sent a copy of the Cure Notice to the GSA's Contracting Officer, Ms. Jacqulin Draughn. Id. With the DOI threatening to terminate Task Order 3 and the BPA for cause, BearingPoint alleged that the performance delays were excusable because they were caused by DOI. (Deft's Exh. I). BearingPoint notified the DOI that the dispute should be referred to and

[2] Based upon the parties' briefs, the material facts necessary to resolve Plaintiff's motion are not in dispute.

resolved by the GSA Contracting Officer, and that the DOI Contracting Officer lacked authority to issue a default termination where the contractor alleged excusable delay. Id.

On September 9, 2005, Ms. Joyce sent an e-mail message to Ms. Draughn, in which she stated:

> I was hoping to hear from you or GSA attorney today regarding the clause in Schedule 70 contract I-FSS-249-B (Default).
>
> I understand that you are researching this and attempting to contact the attorney, but in addition to the questions that I have previously asked, I would like to add the following:
>
> Is it possible for you as the Contracting Officer or GSA to delegate the authority of making the determination on whether the failure is excusable? [Can you please get] back to me? I can submit the request via a formal letter if needed.
>
> Thank you and I look forward to talking with you soon.

(Deft's Exh. F). On September 12, 2005, Ms. Draughn responded by e-mail message to Ms. Joyce, stating as follows:

> Generally, when a dispute arises that relates solely to the task order (i.e., does not impact the schedule contract), the contracting officer responsible for issuing a final decision is the task order CO. If, however, there is a dispute that goes to the terms and conditions of the schedule contract, the matter must be referred to the schedule contracting officer for resolution.
>
> Late delivery seems like a performance issue, a matter for resolution at the task order level. Also, note that FAR 8.406-4 governs terminations for cause under the schedules program. Although it requires compliance with FAR 12.403, it is important to start with and follow the 8.4 procedures. Please call me with any questions on [telephone number].

Id.

The DOI Contracting Officer issued a termination for cause of Task Order 3 on September 29, 2005, and a termination for cause of BPA 73873 on October 27, 2005. (Pltf's Exh. D, E). Ms. Joyce sent copies of both termination notices to Ms. Draughn. Id. BearingPoint filed a claim with the DOI Contracting Officer on July 28, 2006, challenging both terminations for cause, and seeking damages for added and changed work totaling $19,842,777. BearingPoint's September 26, 2006 Complaint challenges the terminations, but does not address the claim for money damages. BearingPoint filed its motion to dismiss on January 19, 2007. Defendant opposed the motion in a February 20, 2007 response. BearingPoint filed a March 9, 2007 reply in support of its motion.

## Relevant Regulations and Contract Provisions

The authority of a contracting officer to terminate a task order or BPA under a GSA Schedule Contract is addressed in a number of regulations, and by certain provisions of the contract at issue. BearingPoint's Schedule Contract included the commercial items contract terms and conditions set forth in FAR § 52.212-4 (May 2001). Section (m) of this clause, "termination for cause," states as follows:

> (m) *Termination for cause*. The Government may terminate this contract, or any part hereof, for cause in the event of any default by the Contractor, or if the Contractor fails to comply with any contract terms and conditions, or fails to provide the Government, upon request, with adequate assurances of future performance. In the event of termination for cause, the Government shall not be liable to the Contractor for any amount for supplies or services not accepted, and the Contractor shall be liable to the Government for any and all rights and remedies provided by law. If it is determined that the Government improperly terminated this contract for default, such termination shall be deemed a termination for convenience.

(Pltf's Exh. H at 9). This clause was in effect on the date of award of the BPA and Task Order 3 to BearingPoint, and remains in effect today.

GSA periodically updates its standard Schedule Contract clauses by issuing "Refresh" amendments which are incorporated into specific Schedule Contracts by reference. GSA issued "Refresh #1" to the official GSA Schedule Contract on June 14, 2000. Pursuant to Refresh # 1, GSA incorporated the May 2000 version of the Federal Supply Schedule clause I-FSS-249-B into the Schedule Contract. (Pltf's Exh. I at 10, 13). Clause I-FSS-249-B is the standard GSA Default clause for Schedule contracts. The May 2000 version provides:

> In addition to any other clause contained herein related to termination, the following is applicable to orders placed under Federal Supply Schedule contracts.
>
> Any ordering office may, with respect to any one or more orders placed by it under the contract, exercise the same right of termination, acceptance of inferior articles or services, and assessment of excess costs as might the Contracting Officer, *except that when failure to deliver articles or services is alleged by the Contractor to be excusable, the determination of whether the failure is excusable shall be made only by the Contracting Officer of the General Services Administration, to whom such allegation shall be referred by the ordering office and from whose determination appeal may be taken as provided in the clause of this contract entitled "Disputes."*

GSA Schedule Contract clause I-FSS-249-B (May 2000) (emphasis added). This clause vests exclusive authority in the GSA Schedule Contracting Officer to determine whether a Schedule contractor is in default when an excusable delay allegation exists.[3]

The granting of exclusive authority to the GSA Contracting Officer in such circumstances also is addressed in the FAR. As of January 29, 2003 when GSA awarded the Schedule Contract to BearingPoint, FAR Subpart 8.4, "Federal Supply Schedules," Section 8.405-5, "Termination for Default," provided as follows:

> (a)(1) An ordering office [DOI] may terminate any one or more orders for default in accordance with part 49, Termination of Contracts. The schedule contracting office [GSA] shall be notified of all cases where an ordering office has declared a Federal Supply Schedule contractor in default or fraud is suspected.
>
> (2) *Should the contractor claim that the failure was excusable, the ordering office [DOI] shall promptly refer the matter to the schedule contracting office [GSA].* In the absence of a decision by the schedule contracting office (or by the head of the schedule contracting agency, on appeal) excusing the failure, the ordering office may charge the contractor with excess costs resulting from repurchase.

---

[3] Through May 12, 2006, GSA had issued 19 other "Refresh" amendments. (Pltf's Exh. J at 4). GSA's "Refresh #19," dated May 12, 2006, contains the same standard Default clause at paragraph C.34. Id. at 6, 9.

FAR § 8.405-5 (2002)[4] (emphasis added). This provision required the DOI, as ordering office, to refer matters involving an excusable delay allegation to the GSA Contracting Officer.

On July 19, 2004, after DOI issued the BPA to BearingPoint, but before DOI issued the Task Order, the FAR Council modified FAR Subpart 8.4 to provide that, in appropriate circumstances, the ordering office *may* terminate a task order for cause:

> FAR § 8.406-4, Termination for Cause
>
> (a)(1) An ordering activity contracting officer may terminate individual orders for cause. Termination for cause shall comply with FAR 12.403, and may include charging the contractor with excess costs resulting from repurchase.
>
> (2) The schedule contracting officer shall be notified of all instances where an ordering activity contracting officer has terminated for cause an individual order to a Federal Supply Schedule contractor, or if fraud is suspected.
>
> (b) *If the contractor asserts that the failure was excusable, the ordering activity contracting officer shall follow the procedures at 8.406-6, as appropriate.*
>
> FAR § 8.406-6, Disputes
>
> (a) Disputes pertaining to the performance of orders under a schedule contract. (1) Under the Disputes clause of the schedule contract, *the ordering activity contracting officer may* (i) issue final decisions on disputes arising from performance of the order . . . *or* (ii) refer the matter to the schedule contracting officer.

FAR §§ 8.406-4, 8.406-6 (July 19, 2004)[5] (emphasis added). Notably, GSA continued to use its standard Default clause after the FAR amendments, and did not alter the terms of the

---

[4] See 48 C.F.R. § 8.405-5 (2002) (revised as of October 1, 2002).

[5] See 48 C.F.R. §§ 8.406-4, 8.406-6 (2004) (revised as of October 1, 2004).

parties' agreements to reflect the FAR amendments. See "Refresh #19," May 12, 2006 (Pltf's Exh. J).

Finally, the Court notes that "Refresh #3" incorporates the commercial items terms and conditions set forth in FAR § 52.212-4 (May 2001). That FAR provision contains a "Changes" clause providing that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties." (Pltf's Exh. H at 9).

## Standard for Decision

Subject matter jurisdiction must be established before the Court may proceed to the merits of any action. Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 88-89 (1998). The party asserting the Court's jurisdiction bears the burden of proof on jurisdictional issues. United Partition Sys., Inc. v. United States, 59 Fed. Cl. 627, 634 (2004) (citing McNutt v. General Motors Acceptance Corp. of Indiana, 298 U.S. 178, 189 (1936); Alder Terrace, Inc. v. United States, 161 F.3d 1372, 1377 (Fed. Cir. 1998); Ware v. United States, 57 Fed. Cl. 782, 784 (2003); Clearwater Constructors, Inc. v. United States, 56 Fed. Cl. 303, 307 (2003)).

In the normal analysis under RCFC 12(b)(1), the burden is on the plaintiff to "come forward with evidence establishing the court's jurisdiction." See Scheuer v. Rhodes, 416 U.S. 232, 236 (1974); Reynolds v. Army and Air Force Exchange Service, 846 F.2d 746, 748 (Fed. Cir. 1988). In unusual cases like this, however, where the traditional roles are reversed, the burden logically should follow. In more neutral language, "the party asserting jurisdiction must be given an opportunity to be heard before dismissal is ordered." Browning Ferris Indus., Inc. and Subsidiaries v. United States, 75 Fed. Cl. 591, 594 (2007) (citing Reynolds, 846 F.2d at 748). The underlying facts relevant to Plaintiff's motion to dismiss are not in dispute.

## Jurisdictional Analysis

On January 29, 2003, when GSA awarded the Schedule Contract to BearingPoint, both FAR § 8.405-5 (a)(2) and the standard GSA Default clause, I-FSS-249-B, provided that only the GSA Contracting Officer had authority to issue a default termination notice when the contractor had alleged excusable delay as a defense. The FAR Council amended and renumbered the FAR provision, effective July 19, 2004, to grant the ordering agency's contracting officer permissive authority to either issue the default termination notice, or to refer the matter to the GSA contracting officer. FAR §§ 8.406-4(b), 8.406-6(a). The Court must determine whether the GSA Contracting Officer alone had authority to issue the termination notices, or whether the DOI Contracting Officer also possessed such authority.

Specifically, the issue is whether the July 19, 2004 FAR revisions have any application to BearingPoint's Schedule Contract, BPA, or Task Orders.

The Court is mindful of the "Changes" clause of the standard terms and conditions, which provides that "[c]hanges in the terms and conditions of this contract may be made only by written agreement of the parties." (Pltf's Exh. H at 9). Further, FAR § 1.108, "FAR conventions," provides that "FAR changes apply to solicitations issued on or after the effective date of the change[.]" FAR § 1.108(d)(1). The FAR provides limited exceptions to this general rule when contracting officers wish to apply FAR amendments retroactively to pre-existing agreements. Specifically, contracting officers are permitted to "include the FAR changes in solicitations issued before the effective date, provided [that] award of the resulting contract(s) occurs on or after the effective date[.]" Id. at (d)(2). Another option is for contracting officers to "include the changes in any existing contract with appropriate consideration." Id. at (d)(3). In the present case, there is no indication that GSA or DOI modified or attempted to modify the Schedule Contract, the BPA, or Task Order 3 to include the amended FAR provisions.

A recent GSA pronouncement submitted by Defendant supports the Court's conclusion. In a February 16, 2007 agency directive issued to "FAS Clause Manual Users," GSA instructs that the standard "Default" clause, I-FSS-249-B, "should no longer be used and needs to be removed from all existing solicitations and contracts." (Deft's Exh. H). The directive further states that "[s]chedule contracting offices should remove I-FSS-249-B from all solicitations *at the next refresh,* and remove it from all in-house offers prior to award." Id. (emphasis added). This directive serves as an acknowledgment by GSA that some contractual action is necessary to eliminate the I-FSS-249-B Default clause in the future, and that the clause still exists in the BearingPoint agreements.

BearingPoint has cited three cases in support of its position. In United Partition Sys., Inc., 59 Fed. Cl. 627, the Court determined that it did not have jurisdiction over a Schedule contractor's action because an Air Force contracting officer exceeded his authority in issuing a default termination where the contractor alleged excusable delay. Id. at 641. The Court held that the unauthorized termination was a legal nullity, stating that "an invalid contracting officer's decision may not serve as the basis for a CDA action[.]" Id. (citing Case, Inc. v. United States, 88 F.3d 1004, 1009 (Fed. Cir. 1996)). While United Partition involved a termination that predated the FAR provisions relied upon by Defendant, the Court in that case found the GSA's standard Default clause, I-FSS-249-B, to be controlling. The Court likewise finds that I-FSS-249-B controls in the present case.

In Monster Government Solutions, Inc., DOTBCA Nos. 4532 et al., 06-1 BCA ¶ 33,236, recon. den., 06-2 BCA ¶ 33,312, the Board of Contract Appeals dismissed a

Schedule contractor's appeal because the ordering agency, the U.S. Custom and Border Protection, Department of Homeland Security, issued an unauthorized default termination. In that case, Appellant Monster had asserted that its performance failures were excusable. Relying on the standard GSA Default clause, I-FSS-249-B, the Board ruled that "only the GSA schedule contracting officer possessed authority to issue an appealable decision on the excusability of the performance failures." Id. at 164,699. Monster is closely aligned with BearingPoint's facts, because it involved an ordering agency's termination action *after* the July 19, 2004 effective date of the FAR revisions. Distinguishing the present case from Monster, however, is that the agency there issued the task order *before* the FAR revisions. Still, the board reached the correct outcome, finding clause I-FSS-249-B controlling.

BearingPoint also cites Spectrum Healthcare Resources, ASBCA No. 55120, 06-2 BCA ¶ 33,377. In Spectrum, the VA had modified the standard GSA Default clause through a formal deviation process, allowing an ordering agency contracting officer to terminate a delivery order for default when a contractor alleged excusable delay. Id. at 165,469. Accordingly, the Board permitted the default termination of the ordering agency to stand. BearingPoint asserts that the "exception proves the rule," where the VA in Spectrum used a formal deviation to alter the outcome prescribed by the then-effective regulations.

While each of the above decisions is instructive, none of them presents the precise fact pattern at issue here. Nonetheless, the Court agrees with Plaintiff that the DOI Contracting Officer lacked authority to issue the terminations at issue.

Assembled together, the terms of the agreement, the relevant regulations, and the case law above present a clear picture of the bargain struck between BearingPoint and the Government. Briefly summarized, BearingPoint agreed to supply the Government with information technology and system integration services. The parties agreed that the DOI Contracting Officer would *not* have the authority to terminate the contract for cause if BearingPoint alleged excusable delay as the cause for default. (Clause I-FSS-249-B; FAR 8.405-5(a)(2)). The parties further agreed that future changes in the terms and conditions of their contract could be made "only by written agreement of the parties." (FAR 52.212-4(c)). In this regard, the parties established the procedures by which subsequent changes to the FAR could be incorporated into the terms of their agreement. (FAR 1.108(d)(1)-(3)).

In the face of this agreement, Defendant would have the Court elevate FAR §§ 8.406-4 and 8.406-6 above the bargained-for terms expressly agreed to by the parties. Were the Court to accept Defendant's argument, it would be difficult to envision *any* contract language upon which a contractor could rely to protect itself against unilateral Government modifications after the ink on their contract had dried.

Defendant's argument runs counter to the fundamental prohibition against the retrospective application of legislation. Indeed:

> the first rule of construction is that legislation must be considered as addressed to the future, not to the past. The rule is one of obvious justice, and prevents the assigning of a quality or effect to acts or conduct which they did not have or did not contemplate when they were performed . . . [A] retrospective operation will not be given to a statute which interferes with antecedent rights . . . unless such be 'the unequivocal and inflexible import of the terms, and the manifest intention of the legislature.'

Union Pac. R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 199 (1913) (quoting United States v. Heth, 7 U.S. (3 Cranch) 399, 413 (1806)). The Court of Claims adopted this reasoning in Lockheed Aircraft Corp. v. United States, where it stated:

> The normal rule is for legislation and regulations to be applied prospectively to events and agreements which occur later . . . . This is particularly true of directives dealing with the substantive aspects of contracts; it would be a rare regulation which would even seek to modify, to the contractor's detriment, substantive rights in an agreement already consummated.

192 Ct. Cl. 36, 46, 426 F.2d 322, 327-28 (1970).

The contract provisions and regulations here certainly constitute such "substantive rights." To disturb those rights would undoubtedly cause a detriment to BearingPoint, who bargained for the benefit of review by the GSA Contracting Officer in the event that BearingPoint asserted excusable delay in response to a termination by the DOI Contracting Officer. See United Partition Sys., Inc., 59 Fed. Cl. at 636 ("In aggregate, the effect of [FAR 804.5-5 and I-FSS-249-B] is to strip the ordering office's contracting officer of authority to issue a final decision evaluating a contractor's excusability defense."). Where BearingPoint availed itself of this contract clause, and thus invoked the protections for which it bargained, this Court will not disturb the underlying bargain. Likewise, where it was within Defendant's rights to modify the contract by issuing a "Refresh," this Court will not excuse Defendant for having failed to do so when perhaps it should have.

## Conclusion

For the reasons discussed above, the Court concludes that the default terminations were "jurisdictionally invalid," and shall be treated as legal nullities. See United Partition, 59 Fed. Cl. at 637. Consequently, there are no terminations properly before the Court, and the Court is without jurisdiction to review the merits of this case. The BPA and Task Order 3 therefore still exist and remain in effect. Plaintiff's Motion to Dismiss is GRANTED. The Clerk of the Court is directed to dismiss Plaintiff's Complaint without prejudice.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge